UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>KERMIT HERSCHELL POWDRILL, II,<br><br>    Defendant. | No. 1:21-CR-076-H |

### MEMORANDUM OPINION AND ORDER

Kermit Herschell Powdrill, II, in his Motion to Suppress, argues that there were not enough facts alleged in an officer's affidavit to support a judge's finding of probable cause to issue a search warrant for his home. There are no disputes of fact concerning the search-warrant affidavit, and Powdrill's primary contention is that the controlled purchases alleged in the affidavit did not support a finding of probable cause. Therefore, a suppression hearing is not needed to resolve this motion. The affidavit cites three video-documented controlled purchases in October 2021 between a confidential informant and Powdrill. The last of these transactions occurred on October 26 at Powdrill's home and, during this deal, Powdrill told the CI that he planned to purchase more methamphetamine in the future. Subsequent phone conversations between Powdrill and the CI on November 18 and December 7 indicate that Powdrill continued to distribute drugs up to the date that the warrant issued—December 7. Based on the facts alleged in the supporting affidavit, the Court finds that the officers searching Powdrill's home relied on the search warrant in objectively reasonable good faith. The Court also finds that the alleged facts were sufficient to allow the issuing judge to find that probable cause existed to warrant a search of Powdrill's home. Therefore, the Court denies Powdrill's Motion to Suppress (Dkt. No. 27).

1.   **Procedural History and Factual Background**

   A.   **Procedural History**

   On December 8, 2021, a grand jury indicted Powdrill on four counts related to methamphetamine distribution and possession. Dkt. No. 3. Powdrill moved to suppress all evidence seized from the execution of the search warrant. Dkt. No. 27. The government filed a response. Dkt. No. 28. So the motion is ripe for resolution.

   B.   **Factual Background**

   On December 7, 2021, ATF Senior Special Agent Dale Watson applied for and received a search warrant to search Powdrill's house in Abilene, Texas. Dkt. Nos. 27-1; 27-2. The evidence to be seized included illicit drugs, including methamphetamine and marijuana; products used to dilute drugs; drug paraphernalia; records related to drug transaction; electronic devices; money; and firearms. Dkt. No. 27-2 at 3–4. On December 8, officers executed the warrant, and they found, among other things, a large Ziploc bag containing a crystalline substance, a jar of suspected marijuana, and a shoebox full of cash. *Id.* at 5.

   In his search-warrant affidavit, Special Agent Watson detailed his experience with investigating narcotics trafficking and explained typical patterns of drug-trafficking activities he had observed. Dkt. No. 27-1 at 2–7. He also described three instances in which a CI made a controlled purchase of methamphetamine from Powdrill.

   First, on October 11, 2021, the CI bought 24.6 grams of methamphetamine from Powdrill in Abilene, but not at Powdrill's house. *Id.* at 8. This purchase was video recorded and, while the video did not show Powdrill's face, "the audio recording was consistent with the purchase of methamphetamine by the CI from [Powdrill]." *Id.* Second, on October 20,

Case 1:21-cr-00076-H-BU   Document 30   Filed 07/11/22   Page 3 of 14   PageID 105

2021, the CI bought 30.9 grams of methamphetamine from Powdrill in Abilene—also not at Powdrill's residence. *Id.* at 8–9. This purchase, too, was video recorded, and a review of the footage confirmed that Powdrill had sold methamphetamine to the CI. *Id.* at 9. And third, on October 26, 2021, the CI bought 29.1 grams of methamphetamine from Powdrill at his home located at 702 South Palm Street. Like the others, this purchase was video recorded, and a review of the footage confirmed that Powdrill had sold methamphetamine to the CI. *Id.* at 9. In this video, Powdrill packaged the purchased methamphetamine and showed the CI a large one-gallon bag containing a crystalline substance purported to be methamphetamine. *Id.* Powdrill also stated that he was almost out of methamphetamine but that he planned on purchasing more in the future. *Id.* at 9–10.

After the purchase on October 26, Special Agent Watson and other agents observed Powdrill's vehicle at 702 South Palm Street on numerous occasions. *Id.* at 10. Powdrill, who is on federal supervised release, did not give this address to his probation officer and, instead, provided a different residential address. *Id.* On November 18, 2021, the CI contacted Powdrill to arrange another purchase of methamphetamine at Powdrill's house. *Id.* But Powdrill told the CI not to come to his house because he believed that he was being watched by law enforcement. *Id.* After this, on December 7, 2021, the CI contacted Powdrill to purchase more methamphetamine. *Id.* at 10–11. Powdrill told the CI that he would sell the CI the same amount of methamphetamine as previously purchased but informed the CI that he was currently in Dallas and on his way back to Abilene. *Id.* at 11. Powdrill advised the CI that the transaction could not take place until the evening. *Id.*

2. **Legal Standard**

The Fourth Amendment of the United States Constitution grants "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." A criminal defendant may invoke his Fourth Amendment rights through a motion to suppress. *See United States v. Kelley*, 981 F.2d 1464, 1467 (5th Cir. 1993). "Generally, on a motion to suppress, the defendant has the burden of proving, by a preponderance of the evidence, that the evidence in question was obtained in violation of [his] constitutional rights." *United States v. Guerrero-Barajas*, 240 F.3d 428, 432 (5th Cir. 2001). But "if a defendant produces evidence that he was arrested or subject to search without a warrant, the burden shifts to the government to justify the warrantless search." *United States v. Roch*, 5 F.3d 894, 897 (5th Cir. 1993); *see also United States v. Ellis*, 330 F.3d 677, 679 (5th Cir. 2003).

3. **Analysis**

   A. **Standing, Burden, and the Lack of Need for a Hearing**

As a preliminary matter, Powdrill has standing to assert his Fourth Amendment rights with respect to his own residence. *See United States v. Beaudion*, 979 F.3d 1092, 1097 (5th Cir. 2020) (citing *United States v. Hernandez*, 647 F.3d 216, 219 (5th Cir. 2011)); *see also* U.S. Const. amend. IV ("The right of the people to be secure in their . . . houses"). And because the search at issue was conducted pursuant to a warrant, the burden rests on Powdrill to prove that the search was in violation of his constitutional rights. *See Guerrero-Barajas*, 240 F.3d at 432.

Powdrill requests an evidentiary hearing on his motion to suppress. Dkt. No. 27 at 1. "[A]n evidentiary hearing is required on a motion to suppress only when necessary to

receive evidence on an issue of fact. Evidentiary hearings are not granted as a matter of course, but are held only when the defendant alleges sufficient facts which, if proven, would justify relief." *United States v. Harrelson*, 705 F.2d 733, 737 (5th Cir. 1983) (citations omitted); *see also United States v. Alvarez*, 542 F. Supp. 2d 597, 599 (W.D. Tex. 2008). Here, there are no contested issues of fact, and the only questions are whether the warrant could be relied upon in objective good faith and, if not, whether the facts alleged in the search-warrant affidavit were enough for a finding of probable cause to issue the search warrant. Therefore, a hearing is not necessary to resolve Powdrill's motion to suppress. *Harrelson*, 705 F.2d at 737.

> **B.     The Fifth Circuit conducts a two-step inquiry into the good-faith exception and probable cause to issue a warrant.**

"The text of the [Fourth] Amendment . . . expressly imposes two requirements. First, all searches and seizures must be reasonable. Second, a warrant may not be issued unless probable cause is properly established." *Kentucky v. King*, 563 U.S. 452, 459 (2011) (citing *Payton v. New York*, 445 U.S. 573, 584 (1980)). Thus, "searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton*, 445 U.S. at 586. But, when officers have obtained a warrant, the Fifth Circuit "conducts a two-part inquiry to determine whether a seizure conducted pursuant to a search warrant violated the Fourth Amendment." *United States v. Allen*, 625 F.3d 830, 835 (5th Cir. 2010).

First, pursuant to the good-faith exception to the exclusionary rule, the Court asks "the objectively ascertainable question" of "whether a reasonably well[-]trained officer would have known that the search was illegal despite the magistrate's authorization." *Id.* (quoting *United States v. Leon*, 468 U.S. 897, 922 n.23 (1984)). "[I]f the evidence was obtained by law enforcement officers who relied on the warrant in objectively reasonable

good-faith, then the evidence obtained during the search is admissible . . . even if the evidence in the affidavit on which the warrant was based was not sufficient to establish probable cause." *Id.* (citing *United States v. Davis*, 226 F.3d 346, 351 (5th Cir. 2000)).

This objective inquiry is conducted from the vantage point of "a reasonably well[-]trained officer." *Leon*, 468 U.S. at 923; *see also United States v. Pope*, 467 F.3d 912, 916 (5th Cir. 2006). And "[i]n conducting the good faith inquiry, the court may examine 'all of the circumstances' surrounding the issuance of the warrant." *Pope*, 467 F.3d at 916 (quoting *Leon*, 468 U.S. at 922 n.23). In general, a court will uphold an officer's good-faith reliance on a warrant unless one of the following four "exceptional circumstances" apply:

> i. when the magistrate or state judge issues a warrant in reliance on a deliberately false affidavit;
>
> ii. when the magistrate or state judge abandons his or her judicial role and fails to perform in a neutral and detached fashion;
>
> iii. when the warrant is based on an affidavit so lacking in indicia of probable cause as to render an officer's belief in it unreasonable; and
>
> iv. when the warrant is so facially deficient that it fails to particularize the place to be searched or the items to be seized.

*Id.* (citing *Leon*, 468 U.S. at 914); *see also United States v. Mays*, 466 F.3d 335, 343 (5th Cir. 2006. "The party challenging the good-faith exception bears the burden of establishing 'that . . . the supporting affidavit . . . [is] insufficient to support the warrant.'" *United States v. Beverly*, 943 F.3d 225, 237 (5th Cir. 2019) (citing *United States v. Signoretto*, 535 F. App'x 336, 339 (5th Cir. 2013)).

If the good-faith exception does not apply, the court must "proceed to the second step and examine whether the affidavit established probable cause that the evidence to be seized would be found in the place to be searched, justifying issuance of the warrant."

*United States v. Moore*, 805 F.3d 590, 593 (5th Cir. 2015) (citing *United States v. Aguirre*, 664 F.3d 606, 613–14 (5th Cir. 2011)). "Probable cause exists where the facts and circumstances within an officer's knowledge and of which he had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed and that evidence bearing on that offense will be found in the place to be searched." *United States v. Pack*, 612 F.3d 341, 352 n.7 (5th Cir. 2010) (citing *Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 370 (2009)), *opinion modified on other grounds on denial of reh'g*, 622 F.3d 383 (5th Cir. 2010). But satisfying the probable-cause requirement does "not demand any showing that such a belief is correct or more likely true than false." *Id.* (quoting *United States v. Antone*, 753 F.2d 1301, 1304 (5th Cir. 1985)). "Probable cause may be established through 'direct observation' or 'normal inferences as to where the articles sought would be located.'" *Moore*, 805 F.3d at 593 (quoting *United States v. Freeman*, 685 F.2d 942, 949 (5th Cir. 1982)).

      **C.**    **The officers searching Powdrill's house relied on the search warrant in objectively reasonable good faith.**

In his motion, Powdrill mentions the good-faith exception but fails to address any of the four exceptional circumstances in *Leon*. *See Leon*, 468 U.S. at 923; *Pope*, 467 F.3d at 916–17. Nothing before the Court indicates that: (i) the supporting affidavit was deliberately false; (ii) the issuing judge abandoned her judicial role in performing her duties in a neutral and detached fashion; (iii) the supporting affidavit was so "bare bones" as to be lacking in any indicia of probable cause; or (iv) the warrant was so facially deficient that it fails to particularize the place to be searched or the items to be seized. *See Pope*, 467 F.3d at 916–17. To the contrary, several alleged facts triangulate to support a finding that the affidavit contained credible alleged facts and circumstances beyond mere conclusory

statements. *See generally United States v. Satterwhite*, 980 F.2d 317, 321 (5th Cir. 1992) ("'Bare bones' affidavits contain wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause.") (citing *United States v. Brown*, 941 F.2d 1300, 1303 n.1 (5th Cir. 1991)).

### i. The CI purchased methamphetamine from Powdrill on three occasions, including once at his home address, which was not disclosed to his probation officer.

Special Agent Watson's affidavit cites three instances where the CI purchased methamphetamine from Powdrill in October 2021. Dkt. No. 27-1 at 8–9. The last of these transactions, on October 26, took place at Powdrill's residence at 702 South Palm Street. *Id.* at 9. At the time, Powdrill was on federal supervised release, and he failed to provide this address to his probation officer. *Id.* at 10. Instead, Powdrill gave his probation officer a different address in Abilene. *Id.* Powdrill's failure to disclose his home address to his probation officer raises the likelihood that evidence of illicit activities would be found in his house.

A video of the October 26 encounter displays Powdrill showing the CI a large bag of marijuana and a one-gallon bag of a crystalline substance purported to be methamphetamine. *Id.* at 9. In the video, Powdrill can be seen weighing and packaging the purchased methamphetamine in the house. *Id.* Powdrill also indicated that he was almost out of methamphetamine and that he would be purchasing more in the future. *Id.* at 9–10.

### ii. Powdrill's staleness argument is unavailing.

Powdrill concedes that this information would have been enough for Special Agent Watson to secure a warrant on October 26. Dkt. No. 27 at 5. But Powdrill argues that because there was no direct evidence of drug activity at the residence between October 26

and the date that the warrant issued—December 7—the three October drug buys were rendered stale and, thus, not sufficient to support a finding of probable cause. *Id.* at 3–5.

"Stale information cannot be used to establish probable cause." *United States v. Robinson*, 741 F.3d 588, 597 (5th Cir. 2014) (citing *Marcilis v. Twp. of Redford*, 693 F.3d 589, 601 (6th Cir. 2012)). "The proof must be of facts closely related in time to the issuance of the warrant in order to justify a finding of probable cause at that time." *United States v. Gallegos*, 239 F. App'x 890, 896 (5th Cir. 2007) (quoting *United States v. McKeever*, 5 F.3d 863, 866 (5th Cir. 1993)). "Even if stale information cannot support probable cause, however, officers may be able to execute a warrant in good faith." *Id.* When evaluating the staleness of information contained in a search-warrant affidavit, the Fifth Circuit considers several case-specific factors, including: the nature of the unlawful activity (*Robinson*, 741 F.3d at 597); whether "the information of the affidavit clearly shows a long-standing, ongoing pattern of criminal activity" (*United States v. Rojas Alvarez*, 451 F.3d 320, 332 (5th Cir. 2006) (quoting *United States v. Pena-Rodriguez*, 110 F.3d 1120, 1130 (5th Cir. 1997))); and the type of evidence sought, including whether it is "the sort that can reasonably be expected to be kept for long periods of time in the place to be searched" (*Rojas Alvarez*, 451 F.3d at 332 (quoting *Pena-Rodriguez* 110 F.3d at 1130); *see Robinson*, 741 F.3d at 597).

The crime at hand involves drug trafficking in which "drugs are generally sold quickly and there is a constant turn-over in supplies." *United States v. Hester*, No. 4:18-CR-00085, 2020 WL 620911, at *3 (E.D. Tex. Feb. 10, 2020), *aff'd*, No. 21-40253, 2022 WL 2067846 (5th Cir. June 8, 2022). Such drug-trafficking crimes tend to be "more fleeting" than child pornography and other crimes carried out over a longer period of time, so the temporal proximity of the information plays a greater role in evaluating staleness. *See*

*United States v. Morrow*, 789 F. App'x 398, 400 (5th Cir. 2019); *United States v. Robinson*, 741 F.3d 588, 597 (5th Cir. 2014) (finding child-porn images taken more than two years prior to the search warrant did not render them stale information) (collecting cases). However, even for drug-trafficking crimes, where there is evidence that a defendant was "receiving a constant influx of drugs at his home and business . . . it is only reasonable that drug evidence would be stored at defendant's . . . home, for an extended period of time." *Hester*, 2020 WL 620911, at *3.

For example, in *Hester* the warrant affidavit indicated that drugs were located at the defendant's home one month before the warrant was sought in May 2018. *Id.* at *1. However, the affiant officer also attested that defendant's drug-distribution activities spanned from at least May 2017 and involved drug transactions every other day. *Id.* at *3. Based on this information, the district court found that "the affidavit's allegations paint the picture of an ongoing pattern of criminal activity" and, thus, concluded that the information was sufficient to justify a finding of probable cause to issue a warrant. *Id.* The Fifth Circuit affirmed. *Hester,* 2022 WL 2067846, at *4.

Here, there is no direct evidence of a several-months-long pattern of constant drug-trafficking activity by Powdrill. However, there are three video-documented instances in which a CI purchased drugs from Powdrill in October 2021. Dkt. No. 27-1 at 8–9. These were not tips of dubious reliability: Special Agent Watson attested for each transaction that audio or video recordings were consistent with the account that the CI had purchased methamphetamine from Powdrill. *Id.* Moreover, during the last of these transactions, on October 26, Powdrill "indicated that he planned on purchasing more methamphetamine in the future using the proceeds from his current methamphetamine and marijuana sales." *Id.*

– 10 –

at 10. So while all the direct evidence of drug-trafficking occurred in October, the evidence shows that Powdrill planned to continue trafficking drugs in the future.

This intent is confirmed by two phone calls between the CI and Powdrill that occurred in the intervening month and a half between the October 26 transaction and the issuance of the warrant on December 7. As detailed below, these calls provide additional support for the searching officers' objective, good-faith reliance on the warrant.

      **a.**    **The November 18 conversation can reasonably give rise to the inference that Powdrill had contraband in his home.**

On November 18, the CI contacted Powdrill to arrange another purchase of methamphetamine at Powdrill's house. *Id.* at 10. But Powdrill told the CI not to come to his house because he believed that he was being watched by law enforcement. *Id.* Powdrill asserts that this "conversation certainly shows that it would not be rational for Defendant to keep drug evidence in the home." Dkt. No. 27 at 3. While that is one possible inference, it is not the most likely one. If there were no drug-related evidence at Powdrill's home on November 18, why would Powdrill fear for the CI to come there? Powdrill's concern about law enforcement officers surveilling his home and the CI going there suggests that evidence of drug trafficking remained at Powdrill's residence.

      **b.**    **The December 7 call indicated Powdrill continued to distribute methamphetamine.**

On December 7—the date the warrant application was submitted and granted—the CI contacted Powdrill to purchase more methamphetamine. Dkt. No. 27-1 at 10–11. Powdrill told the CI that he would sell the CI the same amount of methamphetamine as before and for the same price, but the deal could not take place until 6:30 p.m. *Id.* at 11. While the location of the deal is not specified, the call demonstrates that Powdrill continued

to distribute methamphetamine on the date the warrant issued. This undercuts Powdrill's staleness argument and supports that evidence of drug-trafficking would likely be found at his residence.

### iii. The warrant was issued not only for drugs but also for longer-lasting drug-trafficking records and paraphernalia.

Notably, the search warrant issued for not only drugs but also records related to drug transactions, drug paraphernalia, money, and firearms. Dkt. No. 27-2 at 3–4. These materials can reasonably be expected to be kept for longer periods of time:

> Although probable cause to find illegal narcotics themselves may become stale in a short period of time, a number of the items identified in the warrant—paraphernalia used to manufacture, package, or consume illegal narcotics; currency or other valuables believed to be derived from the sale of illegal narcotics; books, records, and receipts related to the purchase or distribution of illegal narcotics; and telephone books, address books, or other papers reflecting contact information for associates in the manufacture, sale, and distribution of illegal narcotics—are the type of evidence that can reasonably be expected to be retained for long periods of time.

*United States v. Evans*, No. 6:11-61, 2013 WL 5592335, at *3 (S.D. Tex. Oct. 9, 2013). "Courts are more tolerant of dated allegations if the evidence sought is of the sort that can reasonably be expected to be kept for long periods of time in the place to be searched." *United States v. Craig*, 861 F.2d 818, 823 & n.6 (5th Cir. 1988); *see also United States v. Rodriguez*, 551 F. App'x 164, 167 (5th Cir. 2014) (finding that an officer could in good faith conclude that drug "records, receipts, notes, ledgers, and other papers relating to the . . . distribution of controlled substances" could be found in defendant's residence).

In this case, the search warrant targeted drug-related evidence that could reasonably be expected to be kept for longer periods of time, and Special Agent Watson attested, based on his experience, that it is common for drug traffickers to keep proceeds and records of drug transactions in their residences. Dkt. No. 27-2 at 3–5; 27-1 at 3. The fact that the

warrant targeted longer-lasting evidence of drug-trafficking is another factor in finding that the information contained in Special Agent Watson's affidavit supported good-faith reliance, established probable cause, and was not stale.

*            *            *

Taken as a whole, the facts demonstrate that Special Agent Watson's affidavit and application for a search warrant were adequately supported. Thus, a "reasonable well[-]trained officer" would have relied on the search warrant in objectively reasonable good faith. *Leon*, 468 U.S. at 922–23. And Powdrill fails to meet his burden of showing otherwise. The Court finds that the officers searching Powdrill's home relied on the search warrant in objectively reasonable good faith and, thus, the evidence seized from Powdrill's home is admissible. *See United States v. Bell*, 832 F. App'x 298, 301–02 (5th Cir. 2020).

**D.     In any event, probable cause supported issuance of the search warrant.**

The Court separately finds that the search-warrant affidavit established probable cause and justified the issuance of a warrant to search Powdrill's home. As detailed above, the three video-documented drug transactions between the CI and Powdrill in October 2021, combined with the phone calls in November and December, adequately supported the likelihood that evidence of drug-trafficking would be found at Powdrill's residence. The facts and circumstances alleged by Special Agent Watson were "reasonably trustworthy" and "sufficient in themselves to warrant a man of reasonable caution" to believe "that an offense has been or is being committed and that evidence bearing on that offense will be found in the place to be searched." *Pack*, 612 F.3d at 352 n.7 (citing *Safford*, 557 U.S. at 370). The Court finds that the issuing judge had ample alleged facts in the affidavit to find that probable cause existed. *See United States v. Blount*, 123 F.3d 831, 835–37 (5th Cir. 1997).

**4.      Conclusion**

For the foregoing reasons, Powdrill's Motion to Suppress (Dkt. No. 27) is denied.

So ordered on July 11, 2022.

*[signature]*
JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE